## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No.  15-          (ESH) |
| | : | |
| v. | : | VIOLATION: |
| | : | |
| BERNARD RANKIN, | : | 18 U.S.C § 286 (Conspiracy to Defraud |
| | : | the Government with Respect to Claims) |
| Defendant. | : | |

### INFORMATION

The United States Attorney charges that:

### COUNT ONE - CONSPIRACY

### I. INTRODUCTION

**A.    Overview Regarding Tax Matters**

At all times relevant herein:

1.    The Internal Revenue Service (IRS) is an agency of the United States of America Department of the Treasury and has responsibility for administering provisions of the Internal Revenue Code.

2.    A Form 1040 Individual Income Tax Return is a tax form used by an individual to report taxable income from wages and/or from self-employment.

3.    A Schedule C - Net Profit From Business is a tax form attached to a Form 1040 to report income or loss from a business operated or a profession practiced as a sole proprietor.   Income from a Schedule C business is often self-reported, and is not typically reported to the IRS by an independent third party.   A Schedule C-EZ is a simplified version of the Schedule C, which is used when, among other factors, business expenses do not exceed $5,000, and the business has no employees or inventory.

1

4.      The EITC is a refundable federal income tax credit for low- to moderate-income working individuals and families.   When the EITC exceeds the amount of taxes owed, it results in a tax refund to those who claim and qualify for the credit.   To qualify for the EITC, an individual must have earned income from employment, self-employment or another source and meet certain requirements.   The amount of an individual's EITC varies depending on the individual's income and whether the individual has a qualifying child or children.

**B.      The Identity Theft and False Claims for Federal Income Tax Refund Conspiracy**

5.      At all times relevant herein, an extensive network of over 130 individuals, many of whom were receiving some type of public assistance, engaged in a massive sophisticated identity theft and false tax refund scheme in the District of Columbia and elsewhere, seeking over $42 million in fraudulently claimed income tax refunds. During the approximate period 2006 through present (for tax years 2005 through 2013) the co-conspirators caused the filing of at least 12,000 fraudulent federal income tax returns listing one of over 430 addresses located in the District of Columbia, Maryland, and Virginia as the "taxpayer" address.   Some of the addresses were used to file more than 100 fraudulent federal income tax returns in a single year.

6.      Identity theft victims whose identifying information was used on fraudulent federal income tax returns include the elderly; those living in assisted living (including Alzheimer's patients and the disabled, including amputees); drug addicts; and incarcerated prisoners. Identifying information of deceased persons and of children whose parents sold their child's name, date of birth, and social security number was also utilized.

7.      The co-conspirators utilized the stolen means of identification, including names and social security numbers, of at least 130 patients of a nursing home, 84 of whom were over the age of 65 when their stolen identities were used. The patients whose identifying information was

2

stolen included: "A.W.," "C.S.," "E.G.," "F.R.," "H.H.," "J.R.," "J.J.," "J.I.," "M.W.," "M.T.,"

"R.E.," "R.J.," "S.B.," and "W.H."   Five of these individuals, "E.G.," "H.H.," "J.R.," "J.J.," and

"W.H.," were deceased at the time when their means of identification was used in the scheme

alleged herein.

8.     The tax fraud scheme involved using inflated Adjusted Gross Income by creating

and utilizing fraudulent Schedules C to reflect income sufficient to generate a tax refund based

upon the Earned Income Tax Credit.   The IRS issued the income tax refunds via U.S. Treasury

checks.

9.     This identity theft and tax fraud scheme involved several layers of co-conspirators

operating at various levels, each receiving financial compensation for his or her particular role in

the scheme, including:

    a.     Creating and mailing to the IRS fraudulent individual income tax returns,

Forms 1040, which contained:

        i.      Stolen or purchased means of personal identification;

        ii.     False "taxpayer" residential addresses that were, in fact, addresses

of co-conspirators;

        iii.    Fraudulently claimed dependents, who were not dependents of the

"taxpayer" listed on the income tax returns;

        iv.     False claims that the "taxpayer" operated a Schedule C business,

claiming income sufficient to generate a tax refund based on the

EITC; and

        v.      Forged "taxpayer" signatures.

    b.     Stealing the personal identifying information of: patients who were

3

incapacitated and residing at nursing facilities, patients receiving treatment at medical facilities, persons who were incarcerated, and deceased persons, which information was   used to file the fraudulent individual income tax returns;

        c.      Agreeing to allow their personal identifying information to be used on one or more fraudulent income tax returns;

        d.      Permitting their residential addresses to be used on the fraudulent income tax returns for the delivery of fraudulently obtained U.S. Treasury tax refund checks in the names of persons who did not in fact reside at the addresses listed;

        e.      Stealing fraudulently obtained U.S. Treasury tax refund checks from the mail, including U.S. Postal Service carriers.

        f.      Opening bank accounts or using existing bank accounts to negotiate the fraudulently obtained U.S. Treasury checks, issued in the names of third parties, including identity theft victims;

        g.      Forging the endorsements of identity theft victims on the backs of fraudulently obtained income tax refund checks; and

        h.      Abusing their position of employment at a financial institution or money service business to facilitate the negotiation of fraudulently obtained income tax refund checks.

    10.      The identity theft victims in this case were unaware that their means of identification was being used to file income tax returns, did not receive the fraudulently obtained U.S. Treasury checks, and did not endorse the checks or receive any of the proceeds.   In addition, the identity theft victims are not related to the "dependents" listed on the fraudulent income tax returns, never resided at the addresses listed on the fraudulent federal income tax returns or on the resulting U.S. Treasury checks that were issued and never operated the business reported on the

Schedule C.   In some cases, individuals unwittingly turned over their identifying information to a co-conspirator after being told that they were due an income tax refund or were entitled to some "Obama Stimulus Money."

11.     Unindicted co-conspirators who agreed to have the fraudulent U.S. Treasury checks mailed to their residence typically received in exchange approximately $150 per check.  Those who negotiated such checks typically received in exchange approximately $250 per check.  Larger amounts of money were earned by those who solicited others to allow their addresses to be used for the receipt of fraudulently obtained U.S. Treasury checks and those who masterminded the scheme and created and mailed the fraudulent federal income tax returns.

12.     All of the fraudulent income tax returns sought refunds.  Many of the said tax returns listed the "taxpayer's" home address as an address located in the District of Columbia.   In an apparent effort to frustrate IRS fraud detection efforts, many returns were mailed for filing to IRS Service Centers not meant to receive the returns.

13.     For the approximate period 2006 to present, the above-described scheme caused the filing of at least 12,000 fraudulent federal income tax returns, Forms 1040, seeking income tax refunds of at least $42 million, and caused the issuance of fraudulent income tax refunds in the form of U.S. Treasury checks, which were delivered to various addresses located in the District of Columbia, and elsewhere.

C.     **Defendant Bernard Rankin's Role in the Scheme**

## II.  THE CONSPIRACY

14.     From in or about March 2010, and continuing until in or about September 2012, within the District of Columbia and elsewhere, the defendant, **BERNARD RANKIN**, and other individuals whose identities are known and unknown, did unlawfully, knowingly, and willfully

5

conspire and agree together and with each other, to defraud the United States of America and an agency thereof, that is, the Internal Revenue Service, of monies in the approximate amount of $349,693 through the filing of 115 (one hundred fifteen) fraudulent federal income tax returns.

15.     From in or about March 2010, and continuing until in or about April 2011, the defendant, **BERNARD RANKIN**, permitted his Maryland residential address to be used by unindicted co-conspirator B.K. and other individuals, whose identities are known and unknown, as the "taxpayer" address in the preparation of approximately 95 (ninety-five) fraudulent U.S. individual income tax returns, Forms 1040, claiming fraudulent income tax refunds in the amount of approximately $246,322.   Sixty-one U.S. Treasury checks, totaling approximately $155,182, which were in the names of persons whom the defendant, **BERNARD RANKIN**, did not know, were delivered to his residential address.   The defendant, **BERNARD RANKIN**, received approximately $50 to $100 per check as compensation for each check he received at his residential address.

16.     In addition, from in or about January 2011, and continuing until in or about April 2012, the defendant, **BERNARD RANKIN**, deposited into his bank account at Capital One Bank, Account No. XXXXXX-0809 and Account No. XXXXXX-6812, 17 (seventeen) U.S. Treasury checks, totaling approximately $65,050, which were also fraudulently obtained in the scheme detailed herein.   Six of the 17 (seventeen) checks deposited by the defendant, **BERNARD RANKIN**, were received by him at his Maryland residential address.   The remaining 11 (eleven) check were sent to residential addresses in the District of Columbia and elsewhere and provided to the defendant, **BERNARD RANKIN**, by unindicted co-conspirator B.K.   The defendant, **BERNARD RANKIN**, received between $100 and $500 per check as his portion of the proceeds for each check he deposited into his bank account.

6

17.     In addition, from in or about August 2012, and continuing until in or about September 2012, the defendant, **BERNARD RANKIN**, recruited an unindicted co-conspirator, Individual A, to deposit into Individual A's bank account 9 (nine) fraudulently obtained U.S. Treasury checks, totaling approximately $53,617, which were provided to Individual A by the defendant, **BERNARD RANKIN**, and which were also obtained in the scheme detailed herein. The defendant, **BERNARD RANKIN**, received approximately $300 per check as his portion of the proceeds for each check Individual A deposited into Individual A's bank account.

### III.   THE GOAL OF THE CONSPIRACY

18.     It was the goal of the conspiracy that the defendant, **BERNARD RANKIN**, unindicted co-conspirator B.K., and other individuals whose identities are known and unknown, would enrich themselves and obtain money by negotiating fraudulently obtained U.S. Treasury tax refund checks.   These checks were generated by filing false U.S. federal income tax returns, attaching the Schedule C or C-EZ Net Profit From Business, which falsely claimed that each "taxpayer" operated a business as a sole proprietorship, including a "barber" or "childcare," and falsely stated that the "taxpayer" had gross receipts and two or more dependent children, when, in fact, the "taxpayer" was either a victim of identity theft, was misled into providing his or her identifying information, or was a willing participant in the scheme; no such business had been operated by the "taxpayer;" and the "taxpayer" had no such dependents; all of which caused fraudulent income tax refunds to be issued via U.S. Treasury checks that were mailed to various addresses located in the District of Columbia and elsewhere.

## IV.  MANNER AND MEANS

19.     In order to further the objects and goals of the conspiracy, the defendant,

**BERNARD RANKIN**, unindicted co-conspirator B.K., and other individuals whose identities are

known and unknown, used the following manners and means, among others:

A.      The defendant, **BERNARD RANKIN**, would agree to allow his Maryland

residential address to be used by unindicted co-conspirator B.K. and other individuals, whose

identities are known and unknown, as the "taxpayer" address, in the preparation of fraudulent U.S.

individual income tax returns, Forms 1040, seeking fraudulent income tax refunds.

B.      The defendant, **BERNARD RANKIN**, would receive at his Maryland residential

address, through the U.S. mail, fraudulently obtained U.S. Treasury tax refund checks in the names

of other individuals whom he did not know and who did not reside at his address.

C.      The defendant, **BERNARD RANKIN**, would inform unindicted co-conspirator

B.K. when he received U.S. Treasury checks in his residential mailbox.

D.      Unindicted co-conspirator B.K. would retrieve the U.S. Treasury checks from the

defendant, **BERNARD RANKIN**.

E.      The defendant, **BERNARD RANKIN**, would receive from unindicted

co-conspirator B.K. approximately $50 to $100 per check as his portion of the proceeds from the

U.S. Treasury checks mailed to his residence.

F.      Unindicted co-conspirator B.K. would thereafter cause the retrieved checks to be

negotiated.

G.      The defendant, **BERNARD RANKIN**, also would agree to use his Capital One

bank account, Account No. XXXXXX-0809 and Account No. XXXXXX-6812, to deposit

fraudulently obtained U.S. Treasury checks, in the names of individuals he did not know, which were mailed to his residential address or provided to him by unindicted co-conspirator B.K.

H.     The defendant, **BERNARD RANKIN**, would deposit fraudulently obtained U.S. Treasury checks, issued in the names of other persons, into his Capital One bank account in order to negotiate said checks.

I.     The defendant, **BERNARD RANKIN**, would then withdraw the funds and provide them to unindicted co-conspirator B.K.

J.     The defendant, **BERNARD RANKIN**, would usually receive from unindicted co-conspirator B.K. approximately $100 to $500 per check as his portion of the proceeds for each check he deposited into his Capital One bank account.

K.     The defendant, **BERNARD RANKIN**, also would recruit another individual, Individual A, to deposit into Individual A's bank account fraudulently obtained U.S. Treasury tax refund checks obtained in the scheme described herein.

L.     The defendant, **BERNARD RANKIN**, would retrieve from co-conspirators fraudulently obtained U.S. Treasury tax refund checks, issued in the names of other persons, and provide those checks to Individual A in order to negotiate said checks.

M.     Individual A would deposit the fraudulently obtained U.S. Treasury tax refund checks into Individual A's bank account.

N.     Individual A would then withdraw the funds and provide them to the defendant, **BERNARD RANKIN**.

O.     The defendant, **BERNARD RANKIN**, would usually keep approximately $300 from each check deposited by Individual A.

9

## V.  **OVERT ACTS**

20.     Within the District of Columbia and elsewhere, in furtherance of the
above-described conspiracy and in order to carry out the objects thereof, the defendant,
**BERNARD RANKIN**, and other individuals whose identities are known and unknown,
committed the following overt acts, among others:

A.      On or about November 13, 2010, a fraudulent 2008 Form 1040, U.S. Individual
Income Tax Return, and a fraudulent Schedule C, in the name of purported taxpayer "T.H.,"
bearing the Maryland address belonging to the defendant, **BERNARD RANKIN**, were mailed to
the IRS.   On or about December 10, 2010, the IRS issued the requested refund by mailing a check
in the amount of $2,849 to the same Maryland address belonging to the defendant, **BERNARD
RANKIN**.

B.      On or about February 2, 2011, the defendant, **BERNARD RANKIN**, deposited the
fraudulently obtained U.S. Treasury check described above into his Capital One bank account,
Account No. XXXXXX-0809, in order to negotiate said check.

C.      On or about March 20, 2012, a fraudulent 2010 Form 1040, U.S. Individual Income
Tax Return, and a fraudulent Schedule C, in the name of purported taxpayer "J.G.," bearing a
District of Columbia address were mailed to the IRS.   On or about April 20, 2012, the IRS issued
the requested refund by mailing a check in the amount of $5,960 to the same District of Columbia
address.

D.      On or before May 7, 2012, the defendant, **BERNARD RANKIN**, obtained the
fraudulently obtained U.S. Treasury check described above from a co-conspirator and, on or

about May 7, 2012, deposited it into his Capital One bank account, Account No. XXXXXX-0809,

in order to negotiate said check.

(**Conspiracy to Defraud the Government with Respect to Claims**, in violation of Title 18, United States Code, Section 286).

CHANNING D. PHILLIPS
UNITED STATES ATTORNEY
 for the District of Columbia
D.C. Bar No. 415793

By:    *Ellen Chubin Epstein*

ELLEN CHUBIN EPSTEIN
Assistant U.S. Attorney
D.C. Bar No. 442861
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-1773

THOMAS KOELBL
JEFFREY BENDER
Trial Attorneys
Department of Justice, Tax Division
N.Y. Bar No. 4363321
P.A. Bar No. 207972
601 D. Street, N.W.
Washington, D.C. 20530
(202) 305-4077